IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT MENDEZ, et al. | No. C 11-2478 CW |
| Plaintiffs, | ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DOCKET NO. 56) AND GRANTING IN PART PLAINTIFFS' MOTION FOR CLASS CERTIFICATION (DOCKET NO. 57) |
| v. | |
| R+L CARRIERS, INC.; R&L CARRIERS SHARED SERVICES, LLC; and DOES 1-10, | |
| Defendants. | |

INTRODUCTION

Plaintiffs Robert Mendez and Randy J. Martinez bring this action on behalf of themselves and all others similarly situated, alleging that their former employer, Defendants R+L Carriers, Inc., R+L Carriers Shared Services, LLC, and Does 1-10, violated various provisions of the California Labor Code and Business and Professions Code. Defendants now move for partial summary judgment. Plaintiffs oppose the motion and move for class certification, for their appointment as class representatives, and for appointment of class counsel. Both motions were heard on September 20, 2012. Having considered oral argument and all of the papers filed by the parties, the Court DENIES Defendants' motion for partial summary judgment and GRANTS in part and DENIES in part Plaintiffs' motion for class certification.

BACKGROUND

Defendants, R+L Carriers, Inc. and R+L Carriers Shared Services LLC (collectively, R+L), provide national transportation and shipping services to the public, including the transport of freight by motor vehicle.  Fishpaw Decl. ¶ 3.  The company has employed more than 300 truck drivers in California since it first expanded its operations into the State in 2007.  Morrison Decl. ¶¶ 12-13.  Currently, it operates eleven trucking terminals across California.  Fishpaw Decl. ¶ 4.

R+L employs three kinds of truck drivers: (1) "linehaul drivers," who typically work at night transporting freight trailers over long distances and then returning to their starting terminal with new freight that they acquired at their turnaround point; (2) "city drivers," who typically work during the day making multiple pickups and deliveries to customer locations near their home terminal; and (3) "combo drivers," who do some city driving (i.e., local pickups and deliveries) during the day and some linehaul driving in the evenings.  Copsey Decl. ¶¶ 7, 10. All city driving is paid by the hour and all linehaul driving is paid according to a specific distance-based formula. Id. ¶¶ 2-4, 8.

On May 20, 2011, one of R+L's former combo drivers, Plaintiff Mendez, filed this putative class action against the company, alleging various violations of California labor law. Compl. ¶¶ 14-57, Docket No. 1.  On December 16, 2011, three other former drivers -- two linehaul, one combo -- joined Mendez as Plaintiffs and filed a First Amended Complaint (1AC).  1AC ¶ 9, Docket No. 25.  The 1AC specifically charged R+L with failing to

2

provide its drivers with meal and rest breaks, compensate them at the legal minimum wage and overtime rates, pay them in a timely manner, and provide them with accurate wage statements as required by state law.  Id. ¶¶ 27-57.

On July 17, 2012, Plaintiffs Mendez and Martinez moved to certify a class under Rule 23(b)(3) consisting of all truck drivers who were employed by R+L between May 20, 2007 and the present.  They also moved to be appointed class representatives and to have their attorneys appointed class counsel.

That same day, Defendants moved for summary judgment on all of Plaintiffs' claims arising under two Labor Code provisions collectively known as California's "meal and rest break laws." The first of these provisions, section 226.7, states that employers must comply with the State Industrial Welfare Commission's (IWC) rules governing meal and rest breaks.  Cal. Lab. Code § 226.7.  This mandate includes compliance with IWC Wage Order 9-2001, which requires all employers in the transportation industry to provide their employees with a ten-minute rest break for every four consecutive hours of work.  See Cal. Code Regs. tit. 8, § 11090(12)(B).  The Wage Order and the statute both mandate that employers "pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided." Cal. Lab. Code § 226.7(b); see also Cal. Code Regs. tit. 8, § 11090(12)(B) (using language almost identical to section 226.7).

The second Labor Code provision, section 512, requires employers to provide employees with a thirty-minute meal break for every shift longer than five hours.  Cal. Lab. Code § 512(a).  For

3

shifts of ten hours or more, a second meal break is also required

although this break may be waived "by mutual consent of the

employer and the employee."  Id.  As with the rest break

requirement, employers must pay employees an additional hour of

wages if they fail to provide a required meal break.  Cal. Code

Regs. tit. 8, § 11090(11)(D).

DISCUSSION

I.   Motion for Summary Judgment

     A.   Legal Standard

     Summary judgment is properly granted when no genuine and

disputed issues of material fact remain, and when, viewing the

evidence most favorably to the non-moving party, the movant is

clearly entitled to prevail as a matter of law.  Fed. R. Civ.

P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986);

Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir.

1987).

     The moving party bears the burden of showing that there is no

material factual dispute.  Therefore, the court must regard as

true the opposing party's evidence, if supported by affidavits or

other evidentiary material.  Celotex, 477 U.S. at 324; Eisenberg,

815 F.2d at 1289.  The court must draw all reasonable inferences

in favor of the party against whom summary judgment is sought.

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,

587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952

F.2d 1551, 1558 (9th Cir. 1991).

     Material facts which would preclude entry of summary judgment

are those which, under applicable substantive law, may affect the

outcome of the case.  The substantive law will identify which

4

United States District Court
For the Northern District of California

facts are material.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

B.   Express Preemption

In their motion for partial summary judgment, Defendants argue that California's meal and rest break laws are expressly preempted by the Federal Aviation Administration Authorization Act (FAAA Act).

When determining the scope of preemption, courts begin with the "starting presumption that Congress does not intend to supplant state law." <u>N.Y. State Conference of Blue Cross & Blue Shield v. Travelers Insurance Co.</u>, 514 U.S. 645, 654-55 (1995). The inclusion of an express preemption provision in a federal statute implies that Congress did not intend to preempt other matters.  <u>Freightliner Corp. v. Myrick</u>, 514 U.S. 280, 288 (1995). In every case, the scope of preemption ultimately turns on Congressional intent.  <u>Blue Cross & Blue Shield</u>, 514 U.S. at 655. Thus, to determine whether Congress sought to preempt California's meal and rest break laws, the Court must first examine the purpose and history of the FAAA Act.

1.   Purpose & History of the FAAA Act

Congress enacted the FAAA Act in 1994 as part of its ongoing effort to deregulate the interstate trucking industry.  Pub. L. No. 103-305, 108 Stat. 1569 (codified as amended in scattered sections of 49 U.S.C.); <u>see also</u> Motor Carrier Act of 1980, Pub. L. No. 96-296, 94 Stat. 793 (codified as amended in scattered sections of 49 U.S.C.).  The Act was specifically intended to bring greater uniformity to state regulation of motor carriers and

to "create a completely level playing field" between air carriers

and motor carriers.  H.R. Conf. Rep. No. 103-677 (1994), at 85.

In order to achieve these goals, Congress expressly sought to

preempt certain kinds of state regulations governing motor

carriers.  The Act's preemption clause, which borrows much of its

language from the Airline Deregulation Act of 1978 (ADA),[1] states

in relevant part:

> [A] State, political subdivision of a State, or
> political authority of 2 or more States may not enact or
> enforce a law, regulation, or other provision having the
> force and effect of law related to a price, route, or
> service of any motor carrier (other than a carrier
> affiliated with a direct air carrier . . .) or any motor
> private carrier, broker, or freight forwarder with
> respect to the transportation of property.

49 U.S.C. § 14501(c)(1).  As the House Conference Report for the

Act notes, the "[t]ypical forms of regulation" targeted by this

clause "include entry controls, tariff filing and price

regulation, and types of commodities carried."  H.R. Conf. Rep.

No. 103-677 (1994), at 86.  The Report does not specifically

discuss whether the Act was intended to preempt generally

applicable employment laws.

2.  Legal Standard for FAAA Act Preemption

The Ninth Circuit recently articulated a three-part test for

"determining whether § 14501(c)(1) of the FAAA Act preempts State

action."  American Trucking Ass'ns, Inc. v. City of Los Angeles,

---

[1]  Cf. 49 U.S.C. § 41713(b)(4) ("A State . . . may not enact
or enforce a law, regulation, or other provision having the force
and effect of law related to a price, route, or service of an air
carrier or carrier affiliated with a direct air carrier through
common controlling ownership when such carrier is transporting
property by aircraft or by motor vehicle.").

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

660 F.3d 384, 395-96 (9th Cir. 2011) (ATA V).  Under the first part of that test, the court must determine whether the challenged state provision "relate[s] to a price, route, or service of a motor carrier."  49 U.S.C. § 14501(c)(1).  In making this determination, the court "must examine the actual or likely effect of [the] State's action" on the motor carrier industry.  ATA V, 660 F.3d at 396.  Although a provision may be preempted even if it has only an "indirect" effect on motor carriers, the impact of the provision must ultimately be more than "tenuous, remote, or peripheral."  Rowe v. N.H. Transp. Assoc., 552 U.S. 364, 370-71 (2008).  In close cases, the critical inquiry is "whether the provision, directly or indirectly, 'binds the . . . carrier to a particular price, route or service and thereby interferes with competitive market forces within the . . . industry.'"  ATA V, 660 F.3d at 397 (citations omitted).

    If the court finds that the provision does not "relate to" a motor carrier's pricing, routes, or services, then the inquiry ends and the provision is not preempted by the FAAA Act.  Id. at 395.  If, however, the court finds that the provision does "relate to" pricing, routes, or services, it must proceed to the second part of the test to determine whether the provision falls within the "market participant" exception to FAAA Act preemption.  Id. at 395, 398 ("The FAAA Act 'preempt[s] only [S]tate regulation, and not actions a [S]tate takes as a market participant.'" (citations omitted)).  Here, the court must consider whether the challenged state law was "enacted pursuant to the State's regulation of the market, rather than the State's participation in the market in a proprietary capacity."  Id. (emphasis added).  If the provision

7

was enacted pursuant to the state's participation in -- rather than regulation of -- the motor carrier market, then it is not preempted by the FAAA Act.  Id.

Finally, if the provision is not shielded from preemption by either of the first two parts of the test, the court must proceed to the third part of the test.  Id. at 395.  At this stage, the court must determine whether any of the express exemptions codified in § 14501(c)(2) of the FAAA Act apply to the challenged state law provision.  Id.  The most important of these is the Act's "safety exemption," which specifically protects "the safety regulatory authority of a State with respect to motor vehicles." 49 U.S.C. § 14501(c)(2)(A).  State regulations passed for this purpose are not preempted by the FAAA Act.

In sum, a state regulation will be preempted by the FAAA Act only if it is "related to" motor carrier prices, routes, or services and it does not fall under the market participant exception or an express statutory exemption.

>3.   Analysis of FAAA Act Preemption

>>a.   "Related to" Motor Carrier Prices, Routes, or Services

Both of the Labor Code sections that Defendants contend are preempted here -- sections 226.7 and 512 -- apply broadly to all employers in California.  Neither provision specifically refers to the motor carrier industry or even remotely resembles the "[t]ypical forms of regulation" that the House Conference Report originally identified as targets of the FAAA Act's preemption clause.  See H.R. Conf. Rep. No. 103-677 (1994), at 86 (listing state "entry controls, tariff filing and price regulation, and

[regulation of] types of commodities carried" as justifications for the Act's preemption clause). Thus, these provisions do not appear to "relate to" motor carrier prices, routes, or services for the purposes of FAAA Act preemption. Cf. Air Transport Ass'n of Am. v. City of S.F., 992 F. Supp. 1149, 1183 (N.D. Cal. 1998) ("Congress did not . . . through the [ADA's preemption clause], exempt the airlines from generally applicable employment laws."), aff'd, 266 F.3d 1064, 1079 (9th Cir. 2001).

California's meal and rest break laws also differ significantly from the preempted statutes and regulations that Defendants identify in their motion. The two Maine statutory provisions that the Supreme Court found preempted by the FAAA Act in Rowe, for instance, sought to regulate tobacco through its shipment and delivery processes. 552 U.S. at 368-70. One of the provisions effectively required motor carriers transporting tobacco products to offer a new kind of delivery service (known as "recipient-verification"), id. at 368-69, while the other imposed new civil penalties on carriers who transported tobacco to unlicensed retailers (thereby requiring the carriers to examine every package they ship and to monitor constantly which Maine retailers have tobacco licenses), id. at 369. Recognizing that each of these requirements had a "direct connection with motor carrier services," the Rowe Court held that both were preempted by the FAAA Act. Id. at 371 (citations omitted). Because California's meal and rest break laws do not uniquely burden motor carriers in the same way, Rowe offers little support to Defendants here.

United States District Court
For the Northern District of California

Defendants' reliance on <u>American Trucking Association v. City of Los Angeles</u>, 559 F.3d 1046 (9th Cir. 2009) (<u>ATA II</u>), is similarly misplaced.[2]   In that case, the Ninth Circuit held that a series of "Drayage Services Concession Agreements" between the cities of Los Angeles and Long Beach and local motor carriers were preempted by the FAAA Act.   <u>Id.</u> at 1053.   The court recognized Concession Agreements had a direct impact on the motor carrier industry because they created new rules governing the equipment, licensing, and record-keeping practices of all motor carriers using the ports of Long Beach and Los Angeles.   <u>See id.</u> ("That the Concession agreements relate to prices, routes or services of motor carriers can hardly be doubted.").   Motor carriers, in short, were not simply affected indirectly by the new regulations -- they were the principal object of those regulations.

California's meal and rest break laws, in contrast, apply to all employers in California and do not "aim directly at the carriage of goods." <u>Rowe</u>, 552 U.S. at 376.   As such, these provisions cannot be said to relate <u>directly</u> to motor carriers' prices, routes, or services.   <u>See</u> <u>Dilts v. Penske Logistics LLC</u>, 819 F. Supp. 2d 1109, 1116 (S.D. Cal. 2011) ("The preemption language of the FAAA Act contained in Section 14501 does not, on its face, explicitly encompass state regulation of meal and rest breaks."), <u>appeal docketed</u> No. 12-55705 (9th Cir. Apr. 19, 2012).

---

[2] Defendants refer to this case as "<u>ATA I</u>" in their motion rather than "<u>ATA II</u>."   Instead of following Defendants' naming convention, the Court will refer to the case as "<u>ATA II</u>," following the convention adopted by the Ninth Circuit in <u>ATA V</u>, 660 F.3d at 394-95.

The Court must therefore focus instead on whether these provisions affect carriers _indirectly_.  _See_ _Rowe_, 552 U.S. at 370 (noting that preemption "may occur even if a state law's effect on rates, routes or services 'is only indirect'" (citations omitted)).

The Ninth Circuit addressed a similar question in _Californians for Safe & Competitive Dump Truck Transportation v. Mendonca_, 152 F.3d 1184, 1185 (9th Cir. 1998).  There, the court held that California's Prevailing Wage Law (CPWL), Cal. Lab. Code §§ 1770-80, another generally applicable provision of the Labor Code, was not "related to" motor carrier rates, routes, or services.  152 F.3d at 1189-90.  Noting that the CPWL did not "frustrate[] the purpose of deregulation by _acutely_ interfering with the forces of competition," it held that the law was not preempted by the FAAA Act.  _Id._ at 1189.

Although the Ninth Circuit has never specifically addressed whether the FAAA Act preempts California's meal and rest break laws, Defendants cite four cases from other California federal district courts that have recently confronted this question: _Campbell v. Vitran Express, Inc._, 2012 WL 2317233 (C.D. Cal.); _Aguiar v. Cal. Sierra Express_, 2012 WL 1593202 (E.D. Cal.); _Esquivel v. Vistar Corp._, 2012 WL 516094 (C.D. Cal.); and _Dilts_, 819 F. Supp. 2d at 1114-23.  In each of these cases, the court held that the FAAA Act preempts California's meal and rest break laws.  Plaintiffs cite an earlier decision from a state superior

**United States District Court**
For the Northern District of California

court that reached the opposite conclusion.  <u>Cemex Wage Cases</u>,

JCCP CJC-07-004520 (S.F. Super. Ct. Feb. 19, 2010).[3]

Nonetheless, the decided cases offer only limited guidance

here because none of them recognizes the full flexibility that

California's meal and rest break laws offer employers.  For

instance, the decisions fail to address the fact that an employer

may comply with section 226.7's rest break requirement by simply

paying its employees an additional hour of wages.[4]  Cal. Lab. Code

§ 226.7(b); Cal. Code. Regs. tit. 8, § 11090(12)(B).  This option

allows motor carriers to satisfy the rest break requirement

without altering their routes or services whatsoever.  Although

the additional wages might have a slight impact on a motor

carrier's prices, this impact would not be large enough to raise

preemption concerns.  As the Ninth Circuit recognized in <u>Mendonca</u>,

generally applicable wage protections can affect a motor carrier's

prices without falling under the FAAA Act's preemptive scope.

152 F.3d at 1189 (holding that even if the CPWL raised a motor

carrier's prices by twenty-five percent, the effect would still be

considered "no more than indirect, remote, and tenuous" for the

purposes of determining FAAA Act preemption).  The wage

alternative thus significantly reduces section 226.7's impact on

[3] Other courts have also declined to find California's meal
and rest break laws preempted by the FAAA Act.  <u>See</u> <u>Cardenas v.</u>
<u>McLane FoodService, Inc.</u>, 796 F. Supp. 2d 1246, 1254-56 (C.D.
Cal.); <u>Reinhardt v. Gemini Motor Transport</u>, 2012 WL 1435008, at
*5-*6 (E.D. Cal.).  Those cases, however, did not treat the
preemption issue as a question of law so their reasoning is of
limited applicability here.

[4] <u>Aguiar</u> and <u>Campbell</u>, for instance, do not mention the wage
alternative at all.  Although <u>Dilts</u> and <u>Esquivel</u> both briefly
acknowledge that this option is available, each dismisses it as
not viable without explanation.

motor carrier prices, routes, and services and undercuts the

reasoning of the four cases that Defendants cite, all of which

assume that section 226.7 inflexibly requires motor carriers to

provide drivers with numerous breaks throughout the day.  Cf.

Dilts, 819 F. Supp. 2d at 1118 ("The fairly rigid meal and break

requirements impact the types and lengths of routes that are

feasible.").

        Because of this wage alternative, the only breaks that motor

carriers must actually provide to drivers are the less-frequent

meal breaks.  And California law allows even that requirement to

be partially waived at the employee's discretion.  Cal. Lab. Code

§ 512(a).  State regulations also permit employers to provide "on-

duty" meal periods when "the nature of the work" makes off-duty

meal periods infeasible and the employee consents.  Cal. Code.

Regs. tit. 8, § 11090(11)(C).  When combined with section 226.7's

wage alternative, these waivers and on-duty meal period options

could reduce the overall burden on motor carriers to providing a

single thirty-minute break during any six- to twelve-hour shift.[5]

The meal and rest break laws therefore offer motor carriers

significantly more flexibility than Defendants and other courts

have recognized.

        In light of this flexibility, it is unlikely that

California's meal and rest break provisions would rigidly "bind"

motor carriers to particular rates, routes, or services.

        [5] This single-break requirement would impose only minimal
burdens on motor carriers because -- under new federal regulations
that take effect in June 2013 -- drivers will be required to take
thirty-minute breaks anyway on shifts longer than eight hours.  49
C.F.R. § 395.3(a)(3).

United States District Court
For the Northern District of California

Accordingly, these provisions do not "relate to" motor carrier rates, routes, or services and are not preempted by the FAAA Act.

> b.   "Market Participant" Exception and "Safety" Exemption

Because California's meal and rest break laws have only a tenuous and peripheral effect on motor carriers' prices, routes, or services, the Court need not address whether these provisions qualify for the "market participant" exception or "safety" exemptions.

C.   Implied Preemption

In addition to arguing that the meal and rest break laws are expressly preempted by the FAAA Act, Defendants contend that these laws are impliedly preempted by the Federal Motor Carrier Safety Administration's (FMCSA) "Hours of Service" regulations, 49 C.F.R. § 395.3.[6]

Absent explicit preemptive language, there are two types of implied preemption: field preemption and conflict preemption. Crosby v. Nat'l Foreign Trade Council, 530 U.S. 363, 372 (2000). Field preemption occurs where Congress has entirely displaced state law in a specific field of regulation while conflict preemption occurs when state legislation "actually conflicts with federal law." Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n, 461 U.S. 190, 204 (1983). Here,

---

[6] Defendants fail to identify any specific provisions of the Code of Federal Regulations that purportedly conflict with California law. The Court therefore assumes that Defendants' implied preemption argument is based on 49 C.F.R. § 395.3, a regulation entitled, "Maximum driving time for property-carrying vehicles," which appears to be the "'Hours of Service' regulation" that Defendants discuss in their briefs.

14

Defendants contend that California's meal and rest break requirements conflict with FMCSA regulations.  As with express preemption, the Court's analysis begins by examining Congressional intent.  <u>Gade v. Nat'l Solid Wastes Mgmt. Ass'n</u>, 505 U.S. 88, 96, 98 (1992).

> 1.   Purpose & History of FMCSA's "Hours of Service" Regulations

Congress created the FMCSA as part of the Motor Carrier Safety Improvement Act of 1999, §§ 101-07, Pub. L. No. 106-159, 113 Stat. 1748, and housed it within the Department of Transportation.  The agency was created, in part, as a response to what Congress then viewed as the Department's failure to pass adequate rules regulating motor carrier drivers' "hours of service."  <u>Id.</u> § 3(3).  The FMCSA subsequently promulgated rules governing the number of hours that these drivers may work, how much time they must be given between shifts, and when they must be given rest breaks.  49 C.F.R. §§ 395.1-395.3.  As noted above, a new rule, set to take effect in June 2013, will require motor carriers to provide drivers with at least one thirty-minute break for any shift over eight hours in length.  <u>Id.</u> § 395.3(a)(3).  Nowhere does this or any other FMCSA rule state that motor carriers are exempt from complying with generally applicable state employment laws that require employers to provide meal and rest breaks.

> 2.   Preemptive Scope of FMCSA's "Hours of Service" Regulations

California's meal and rest break provisions do not impede or undermine the FMCSA's effort to enforce any of its "Hours of Service" regulations.  The provisions are not only consistent with

15

the FMCSA's regulations but also entirely compatible with the federal legislation that gave rise to those regulations.  See 49 U.S.C. § 31502(b) (authorizing the Secretary of Transportation to establish maximum hours-of-service standards for motor carrier drivers).

What's more, the FMCSA itself has explicitly rejected Defendants' preemption argument.  Federal law empowers the agency "to declare [any] incompatible State law or regulation pertaining to commercial motor vehicle safety unenforceable in interstate commerce."  49 C.F.R. § 355.25(c); see also 49 U.S.C. § 31141(a) ("A State may not enforce a State law or regulation on commercial motor vehicle safety that the Secretary of Transportation decides under this section may not be enforced.").  In 2008, the FMCSA used this authority to deny a petition by several motor carriers who asked the agency to find California's meal and rest break laws preempted.  Petition for Preemption of California Regulations on Meal Breaks and Rest Breaks for Commercial Motor Vehicle Drivers, 73 Fed. Reg. 79,204 (FMCSA Dec. 18, 2008).  The agency roundly rejected the motor carriers' "far-reaching argument that FMCSA can and should preempt the California statutes and rules on wages, hours, and working conditions which prevent carriers from maximizing their employees' driving and on-duty time."  Id. at 79,206.

Because Defendants cannot identify any legitimate conflict with federal law -- and fail to cite even a single case to bolster their argument -- the Court finds that California's meal and rest break laws are not preempted by the FMCSA regulations.

II.  Motion for Class Certification

     A.   Defendants' Statewide Policies & Practices

          Plaintiffs argue that Defendants employ several uniform
statewide policies and practices that render the issues in this
case appropriate for class treatment.  Specifically, Plaintiffs
point to Defendants' meal and rest break practices, their
"breakdown" pay policy, the formula that they use to calculate
linehaul drivers' pay, and the timekeeping system they use to log
city drivers' hours.  Each of these policies is detailed below.

          1.   Meal and Rest Break Policy

          Since 2007, Defendants have issued a handbook to all of their
California employees describing the company's formal policy for
providing meal and rest breaks to employees.  Fishpaw Dep. 15:19-
16:10; Henderson Decl., Ex. 1.  Although Defendants distribute
this handbook to every California driver, they do not expect or
require drivers to abide by the handbook's official meal and rest
break policy because, in practice, drivers' schedules make it
difficult to adhere to the policy.  Fishpaw Dep. 102:17-103:1,
222:13-223:20.  Instead, drivers follow the informal break
policies set by dispatchers and managers at every terminal.
Fernandez Dep. 79:1-:11; Fishpaw Dep. 222:13-223:20, 224:4-:10;
Hill Dep. 68:19-69:14, 151:17-152:9.

          While Plaintiffs acknowledge that Defendants do not impose
their official, uniform break policy on drivers, they argue that
Defendants nevertheless follow several unwritten policies that
effectively discourage drivers across the State from taking
breaks.  They have submitted declarations from dozens of drivers
at various terminals to show that city drivers often feel

17

United States District Court
For the Northern District of California

pressured to skip breaks because of their busy delivery schedules. Childs Decl. ¶ 16; Johnson Decl. ¶ 17; Tantzen Decl. ¶ 6.  They also highlight Defendants' scoring system for ranking city drivers based on the number of pickups and deliveries they make each week. Fishpaw Dep. 240:3-243:25.  Taken together, Plaintiffs argue, these and other informal practices amount to a statewide policy of discouraging both city and linehaul drivers from taking breaks.

### 2.   Linehaul Driver Pay Formula

Defendants use a special distance-based formula, known as "piece-rate compensation," to pay their drivers for every linehaul assignment they complete.  Henderson Decl., Ex. 8; Copsey Decl. ¶ 8.  Under that formula, the driver's total estimated driving distance is first divided by fifty miles per hour in order to calculate the rough number of hours a driver spent on the road. Henderson Decl., Ex. 8; Copsey Decl. ¶ 8.  One hour is then added to that figure to account for any non-driving work that the driver may have performed during the trip, such as transferring freight or waiting for another trailer.  Henderson Decl., Ex. 8; Copsey Decl. ¶ 8.  Finally, that number is multiplied by the individual driver's hourly rate -- which is typically assigned to a driver based on seniority -- to calculate the driver's total compensation for that trip.[7]  Henderson Decl., Ex. 8; Copsey Decl. ¶ 8.

If a driver believes that this formula has failed to compensate him or her for a particular trip, he or she may submit "notes and additional documentation" to request additional pay.

---

[7] The formula can be represented numerically as follows:
Linehaul Pay =
(([Estimated Distance] ÷ 50 mph) + 1 hour) x [Hourly Rate].

United States District Court
For the Northern District of California

Copsey Decl. ¶ 12.  Those notes must then be reviewed by a supervisor and by Defendants' national payroll department to determine whether the driver is entitled to additional pay.  Id.; Fishpaw Dep. 149:15-:22.  The parties dispute whether or not drivers are fully aware of this "extra pay" policy.  Fishpaw Dep. 149:15-:22.

### 3.   "Breakdown" Pay Policy

When a linehaul driver's truck breaks down during a trip, the driver is not compensated for the first two hours that he or she is delayed during that breakdown.  Copsey Decl. ¶ 11.  Rather, if the breakdown lasts less than two hours, the driver is paid according to the standard linehaul pay formula without any adjustment.  Id.  If the breakdown lasts more than two hours, however, the driver is paid at the hourly rate for whatever additional time is required to repair the breakdown.  Id.

### 4.   Rounding System for City Driving

Unlike linehaul drivers, city drivers are paid by the hour.  Fishpaw Dep. 65:14-66:23.  To calculate the number of hours worked by a city driver, Defendants use a timekeeping system that sometimes rounds a driver's pay to the nearest hour.  Henderson Decl., Ex. 11.  If a driver clocks in seven minutes or less ahead of schedule, for instance, the system will automatically round his or her start time up to the scheduled start time (thus, deducting the additional seven minutes or less that the driver would have logged had there been no rounding).  Id.  In addition to the daily rounding, at the end of every week, the system rounds the driver's total number of hours worked to the nearest quarter hour.  Id.

B.   Legal Standard for Class Certification

Plaintiffs seeking to represent a class must satisfy the threshold requirements of Rule 23(a) as well as the requirements for certification under one of the subsections of Rule 23(b). Rule 23(a) provides that a case is appropriate for certification as a class action if

> (1)  the class is so numerous that joinder of all members is impracticable;
>
> (2)  there are questions of law or fact common to the class;
>
> (3)  the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4)  the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Plaintiffs must also establish that one of the subsections of Rule 23(b) is met.  In the instant case, Plaintiffs seek certification under subsection (b)(3), which permits certification where common questions of law and fact "predominate over any questions affecting only individual members" and class resolution is "superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3). These requirements are intended "to cover cases 'in which a class action would achieve economies of time, effort, and expense . . . without sacrificing procedural fairness or bringing about other undesirable results.'"  Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 615 (1997) (quoting Fed. R. Civ. P. 23(b)(3) Adv. Comm. Notes to 1966 Amendment).

20

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

Plaintiffs seeking class certification bear the burden of demonstrating that each element of Rule 23 is satisfied; a district court may certify a class only if it determines that the plaintiffs have borne their burden. Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 158-61 (1982); Doninger v. Pac. Nw. Bell, Inc., 564 F.2d 1304, 1308 (9th Cir. 1977). In general, the court must take the substantive allegations of the complaint as true. Blackie v. Barrack, 524 F.2d 891, 901 (9th Cir. 1975). However, the court must conduct a "'rigorous analysis,'" which may require it "'to probe behind the pleadings before coming to rest on the certification question.'" Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011) (quoting Falcon, 457 U.S. at 160-61). "Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped." Dukes, 131 S. Ct. at 2551. To satisfy itself that class certification is proper, the court may consider material beyond the pleadings and require supplemental evidentiary submissions by the parties. Blackie, 524 F.2d at 901 n.17. "When resolving such factual disputes in the context of a motion for class certification, district courts must consider 'the persuasiveness of the evidence presented.'" Aburto v. Verizon Cal., Inc., 2012 WL 10381, at *2 (C.D. Cal.) (quoting Ellis v. Costco Wholesale Corp., 657 F.3d 970, 982 (9th Cir. 2011)). Ultimately, it is in the district court's discretion whether a class should be certified. Molski v. Gleich, 318 F.3d 937, 946 (9th Cir. 2003); Burkhalter Travel Agency v. MacFarms Int'l, Inc., 141 F.R.D. 144, 152 (N.D. Cal. 1991).

**United States District Court**
For the Northern District of California

C.   Rule 23(a) Prerequisites

1.   Numerosity

Plaintiffs seek to certify a class of at least 345 current and former R+L drivers.  Morrison Decl. ¶¶ 12-13.  Defendants do not dispute that Plaintiffs have satisfied the numerosity requirement.  Accordingly, the Court finds that Plaintiffs have satisfied this prerequisite.

2.   Commonality

Rule 23 contains two related commonality provisions.  Rule 23(a)(2) requires that there be "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  Rule 23(b)(3), in turn, requires that such common questions predominate over individual ones.

The Ninth Circuit has explained that Rule 23(a)(2) does not preclude class certification if fewer than all questions of law or fact are common to the class:

> The commonality preconditions of Rule 23(a)(2) are less rigorous than the companion requirements of Rule 23(b)(3).  Indeed, Rule 23(a)(2) has been construed permissively.  All questions of fact and law need not be common to satisfy the rule.  The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class.

Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998).

Here, Plaintiffs have identified several common questions of law and fact.  These include: whether Defendants' linehaul pay formula undercompensates linehaul drivers, whether Defendants' timekeeping system undercompensates city drivers, whether Defendants' breakdown policy complies with state law, and whether

**United States District Court**
For the Northern District of California

the wage statements Defendants issue to drivers are accurate.  All of these questions require an inquiry into specific policies and practices that affect Defendants' drivers across California. Courts have granted class certification to answer questions similar to these in other cases.  See, e.g., Dilts v. Penske Logistics LLC, 267 F.R.D. 625, 632-33 (S.D. Cal. 2010) (finding that common questions about trucking company's statewide pay policies and employment practices were amenable to class treatment).

Rather than dispute that these questions are amenable to class treatment, Defendants argue that Plaintiffs cannot satisfy the commonality requirement because they fail to provide sufficient evidentiary support for their allegations.  This argument ignores the ample evidentiary record that Plaintiffs have assembled to support their claims here.  Specifically, Plaintiffs provide numerous declarations and deposition transcripts to show that several of Defendants' statewide policies and practices uniformly affect all members of the putative class.  See, e.g., Henderson Decl., Ex. 8 (outlining linehaul pay formula), Ex. 11 (describing timekeeping policies); see also Pls.' Appendix of Declarations from Putative Class Members 20-126 ("Pls.' App.") (providing declarations from over forty former drivers recounting similar work experiences).

The detailed nature of Plaintiffs' claims distinguishes this case from Dukes, which Defendants cite for the proposition that commonality requires a heightened evidentiary showing by the plaintiff.  Whereas "Dukes involved the allegation that the company's lack of centralized pay policy was unlawful . . . .

[h]ere, by contrast, Plaintiffs allege a specific set of [unlawful] practices." Delagarza v. Tesoro Refining & Marketing Co., 2011 WL 4017967, at *8 (N.D. Cal.) (finding commonality because plaintiff-employees identified a particular employment policy that "applie[d] to all the members of the class"). Given the specificity of Plaintiffs' allegations and the weight of their supporting evidence, the Court finds that Plaintiffs have satisfied the commonality prerequisite.

3.   Typicality

Rule 23(a)(3)'s typicality requirement provides that a "class representative must be part of the class and possess the same interest and suffer the same injury as the class members." Falcon, 457 U.S. at 156 (quoting E. Tex. Motor Freight Sys., Inc. v. Rodriguez, 431 U.S. 395, 403 (1977)) (internal quotation marks omitted). The purpose of the requirement is "to assure that the interest of the named representative aligns with the interests of the class." Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992). Rule 23(a)(3) is satisfied where the named plaintiffs have the same or similar injury as the unnamed class members, the action is based on conduct which is not unique to the named plaintiffs, and other class members have been injured by the same course of conduct. Id. Class certification is inappropriate, however, "where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." Id. (quoting Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 903 F.2d 176, 180 (2d Cir. 1990).

**United States District Court**
For the Northern District of California

In this case, as noted above, Plaintiffs Mendez and Martinez allege injuries based on a variety of Defendants' statewide employment practices.  Any injuries that Mendez and Martinez suffered as a result of these formal policies and practices would likely be typical of those suffered by Defendants' other California drivers, all of whom were subject to the same policies and practices.  Defendants do not identify any unique defenses they might raise to Plaintiffs' claims based on these official statewide policies.

Defendants do, however, identify possible defenses to Plaintiffs' meal and rest break claims.  Defendants note that they have no formal, statewide policy for providing truck drivers with timely meal and rest breaks and that, as a result, break policies can vary from terminal to terminal.  Mendez and Martinez were, therefore, potentially subject to unique break policies set by the dispatchers and managers at their respective terminals.  This type of variation in location-specific workplace policies can sometimes serve as a barrier to certification in large employment class actions by casting doubt on the representativeness of the named plaintiff's injuries.  See, e.g., Doninger, 564 F.2d at 1311 ("Since different affirmative action programs, and thus possibly different patterns and practices, exist in each establishment, appellants would have considerable difficulty in adequately representing class members from the other three . . . establishments [in a Title VII suit].").  Thus, in order to satisfy the typicality prerequisite for their meal and rest break claims, Plaintiffs must show that Defendants' informal break policies are consistent across different terminals.

United States District Court
For the Northern District of California

Plaintiffs have made this showing with respect to city drivers.  They offer declarations from more than thirty former city drivers who recount facing similar pressures to skip breaks despite working with different dispatchers at various terminals across California.  Pls.' App. 20-185.  These declarations support Plaintiffs' claims that Defendants have a common practice of overloading city drivers' schedules to such an extent that drivers are ultimately discouraged from taking breaks.  <u>Id.</u>  Plaintiffs also highlight Defendants' system for ranking city drivers by delivery speed as further evidence that these drivers are pressured to skip breaks.  Fishpaw Dep. 240:3-243:25.  Even if these practices do not represent Defendants' official company policy, Plaintiffs have shown that they are prevalent enough among different terminals to satisfy Rule 23's typicality prerequisite for city drivers.  <u>See</u> <u>Pina v. Con-Way Freight, Inc.</u>, 2012 WL 1278301, at *5 (N.D. Cal.) (finding Rule 23(a) typicality satisfied because "the proposed representatives claim to have been subjected to the same illegal practices regarding meal and break periods as the proposed class" of truck drivers even though class members worked at different facilities).

Plaintiffs have not, however, made this showing with respect to linehaul drivers.  Unlike city drivers, linehaul drivers are not closely monitored by dispatchers during their runs nor are they subject to any kind of ranking system.  <u>See</u> Mantz Decl. ¶ 9.  Moreover, because linehaul drivers typically stop less frequently during runs than city drivers, they do not face the same challenges in finding a time or place to take a break.  <u>Id.</u>  These critical differences between city driving and linehaul driving

United States District Court
For the Northern District of California

require Plaintiffs to differentiate more clearly between the policies and practices that discourage each group of drivers from taking breaks. Instead, however, Plaintiffs' evidence and allegations focus almost exclusively on the practices that discourage city drivers from taking breaks -- specifically, overloaded delivery schedules and delivery-speed rankings.

Although Plaintiffs offer some evidence that linehaul drivers are discouraged from taking breaks, that evidence is ultimately unpersuasive. Plaintiffs rely primarily on an analysis of nineteen daily driver logs that purport to show how rarely Defendants' linehaul drivers take breaks. See Nutten Decl. ¶¶ 3-4. But the analysis fails to establish that these nineteen drivers constitute a representative cross-section of all linehaul drivers in California or that these drivers were forced to skip breaks for similar reasons. Even more problematically, the analysis never establishes that the logs are supposed to document linehaul drivers' meal and rest breaks in the first place. It is not clear whether these driver logs actually provide reliable evidence of missed breaks at all,[8] which is why courts in

---

[8] For instance, Plaintiffs' argument that the logs are supposed to document meal breaks relies on a California motor vehicle regulation that requires linehaul drivers to record "off duty" time, "sleeper berth[s]," and non-driving time for every trip. See Cal. Code Regs. tit. 13, § 1213(l). But the regulation does not require drivers to record meal breaks. Even the sample driver log included in the regulation lacks a designated space to record meal or rest breaks. If anything, the sample log suggests that a driver's "lunch" break should simply be recorded as generic "off duty" time. See id. Because Plaintiffs' analysis does not provide a comprehensive accounting of drivers' off-duty time -- and fails to provide copies of the actual driver logs themselves -- the analysis cannot establish that the driver logs provide reliable documentation of missed meal breaks.

United States District Court
For the Northern District of California

other cases have expressly rejected driver logs as proof of Rule 23 typicality.  See, e.g., Jasper v. C.R. England, No. 08-cv-05266, Docket No. 98, at 5-6 (C.D. Cal. 2011) (concluding that "[w]ith regard to Plaintiffs' missed rest break claims, . . . . the absence of log entries showing rest breaks means nothing" because drivers are not required to document these breaks on their logs).  Without stronger evidence that Defendants actively discourage linehaul drivers across California from taking breaks, Plaintiffs cannot show that their linehaul driving experiences were typical.

The Court therefore finds that Plaintiff Martinez, whose work for Defendants consisted solely of linehaul driving, does not satisfy the typicality prerequisite with respect to Plaintiffs' meal and rest break claims.  Plaintiffs have not shown that Martinez was subject to the same meal and rest break practices as linehaul drivers at other terminals.  Plaintiff Mendez, on the other hand, satisfies the typicality requirement for these claims since his work involved city driving.  For all of Plaintiffs' other claims -- which are based on Defendants' linehaul pay formula, timekeeping practices, breakdown policy, and other statewide policies -- Martinez and Mendez have both satisfied the typicality prerequisite.

> 4.   Adequacy

Rule 23(a)(4) establishes as a prerequisite for class certification that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).

**United States District Court**
For the Northern District of California

Defendants argue that Plaintiff Mendez is unfit to serve as class representative because he has "serious and unique credibility issues." Opp. 9. Specifically, Defendants assert that Mendez's deposition testimony -- which includes statements that he was regularly denied meal and rest breaks -- conflicts with Defendants' GPS records showing that he made frequent stops during his delivery runs.

In rare circumstances, a plaintiff's lack of credibility may undermine his or her adequacy as a class representative. However, "[f]or an assault on the class representative's credibility to succeed, the party mounting the assault must demonstrate that there exists admissible evidence so severely undermining plaintiff's credibility that a fact finder might reasonably focus on plaintiff's credibility, to the detriment of the absent class members' claims." Dubin v. Miller, 132 F.R.D. 269, 272 (D. Colo. 1990). This standard is difficult to satisfy. See, e.g., Cruz v. Dollar Stores, Inc., 2009 WL 1458032, at *7 (N.D. Cal.) (finding that "inconsistency between [plaintiff's] deposition testimony and statements in a declaration is not sufficient to impugn [his] credibility" as a class representative).

Here, Defendants have not shown that Mendez's credibility will impede his representation of the class. In fact, Defendants' GPS analysis of Mendez's delivery runs, by its own terms, cannot definitively show that he engaged in non-work-related activity during truck stops or that he was actually relieved of duty during every stop. Levine Decl., Ex. 1, at 4 (conceding that "the GPS data cannot answer any question about the detailed activities of Mr. Mendez during [vehicle stops]"). Because Defendants offer no

**United States District Court**
For the Northern District of California

other evidence to impugn Mendez's credibility, their efforts to disqualify him as a representative fail.

So, too, must Defendants' argument that Plaintiff Martinez is unfit to serve as class representative.  Defendants' assertion that Martinez lacks the capacity to understand his claims in this lawsuit is contradicted by the very record they cite in support of that assertion.  Indeed, the same excerpt of Martinez's deposition that Defendants cite as evidence of his inadequacy  ultimately confirms that he understands the substance of his claims in this suit: Martinez was asked multiple times if he understood the allegations in the complaint and, each time, he affirmed that he did.  Martinez Dep. 28:18-:20, 29:9-:10.

The only barrier to Rule 23(a) adequacy in this case is Plaintiff Martinez's inability to represent a statewide class of linehaul drivers on their meal and rest break claims for lack of typicality.  For all other claims in this suit, Plaintiffs Mendez and Martinez are adequate class representatives.[9]

_____

[9] Defendants also argue that Mendez and Martinez are unfit to represent a class that includes Defendants' current drivers because they are no longer employed by Defendants.  Courts in this district have specifically rejected that argument on multiple occasions.  Krzesniak v. Cendant Corp., 2007 WL 1795703, at *11 (N.D. Cal.) ("'Far from being inadequate class representatives, plaintiffs whose relationships with the defendant have been terminated may be more forceful advocates because they will be free from pressure and reprisals by the defendant.'" (citations omitted)); Rosenburg v. Int'l Bus. Machines Corp., 2006 WL 1627108, at *10 (N.D. Cal.) ("It was persuaded by 'several cases [that] not only are former employees adequate representatives of current employees in class actions seeking at least in part declaratory and/or injunctive relief, but . . . that former employees provide superior representation in bringing claims against the employer.'" (citations omitted)).

D.   Rule 23(b) Requirements

1.   Predominance

"The predominance inquiry of Rule 23(b)(3) asks whether proposed classes are sufficiently cohesive to warrant adjudication by representation.  The focus is on the relationship between the common and individual issues."  In re Wells Fargo Home Mortgage Overtime Pay Litig., 571 F.3d 953, 957 (9th Cir. 2009) (internal quotation marks and citations omitted).  "'When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis.'"  Hanlon, 150 F.3d at 1022 (quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1777 (2d ed. 1986)).  A court must make "some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate . . . ."  In re New Motor Vehicles Canadian Export Antitrust Litig., 522 F.3d 6, 20 (1st Cir. 2008) (citation and internal quotation marks omitted).

Here, Plaintiffs assert six class claims against Defendants: violations of California's meal and rest break laws, minimum wage and overtime violations, unlawful withholding of wages, failure to pay employees in a timely manner, failure to provide accurate and itemized wage statements, and unfair business practices.  The following sections address whether common questions of law and fact predominate over individual ones with respect to each claim.

a.   Meal and Rest Break Violations under Sections
226.7 and 512 of the California Labor Code

Sections 226.7 and 512 of the Labor Code require employers to provide their employees with ten-minute rest breaks and thirty-minute meal breaks at specified intervals of time.  As noted above, Defendants do not have a uniform statewide policy for providing meal and rest breaks to drivers.  Thus, in order to satisfy the predominance prerequisite for their meal and rest break claims, Plaintiffs must demonstrate that Defendants' unwritten policies and practices effectively discourage drivers across the State from taking breaks.  Although Plaintiffs have presented sufficient evidence to make this showing for city drivers, they have failed to make the same showing for linehaul drivers.

This Court has found that when a plaintiff's claims are based on "allegations of an unwritten practice, as opposed to a written policy," the putative class members will often "have to prove individual elements in order to show [the defendant]'s liability." Mateo, 2009 WL 3561539, at *6; see also Washington v. Joe's Crab Shack, 271 F.R.D. 629, 640 (N.D. Cal. 2010) (finding individual issues predominated when the plaintiff contended that the defendant's "restaurants in California followed a common unwritten policy of denying meal and rest breaks"); Wren v. RGIS Inventory Specialists, 256 F.R.D. 180, 208-09 (N.D. Cal. 2009) ("Because the Court finds that employees must be offered, but need not be forced to take a meal break, the Court also concludes that many individualized inquiries will be necessary . . . to determine the reason meal breaks were missed and whether they were waived.").

32

In order to overcome this barrier to predominance, the plaintiff must allege specific facts, supported by evidence, to show that the defendant's "informal policies of discouraging the taking of breaks would likely be susceptible to common proof." Pina, 2012 WL 1278301, at *7.

For example, in Pina, the court certified a class of city drivers alleging meal and rest break violations after the named plaintiffs "submitted evidence that the drivers observed by Plaintiff [] sought the permission of their supervisor before taking a meal break, and that such permission was given only after a shift's deliveries were completed." Id.; accord. Dilts, 267 F.R.D. at 638 (certifying a class of truck drivers alleging meal and rest break violations even though the "majority of Plaintiff's evidence as to this question is anecdotal, consisting of the declarations of driver/installers"). The plaintiffs' evidence there consisted primarily of declarations from drivers describing the pressures they faced to skip meals and rest breaks. 2012 WL 1278301, at *7. Because Plaintiffs' evidence is similarly specific and persuasive here, they have demonstrated that the city drivers' meal and rest break claims can be proven principally through common proof. See Pina, 2012 WL 1278301, at *7 ("If Plaintiffs succeed in demonstrating that such a practice is common, the need for further inquiry into individual decisions would be unnecessary. Accordingly, the Court finds that common issues of law and fact predominate . . . ."). Thus, Plaintiffs have satisfied Rule 23(b)(3)'s predominance requirement with respect to city drivers' meal and rest break claims.

Plaintiffs do not, however, satisfy this requirement with respect to linehaul drivers' meal and rest break claims.  As noted above, Plaintiffs fail to present sufficient evidence to establish that Defendants employed a common set of unwritten policies and practices that discouraged linehaul drivers from taking breaks.  This means that linehaul drivers' meal and rest break claims would require individual inquiries into the informal break policies at all eleven of Defendants' terminals in California.  Accordingly, Plaintiffs can only satisfy the predominance requirement on their meal and rest break claims for a subclass of city drivers.

> b.   Minimum Wage and Overtime Violations under
>      Sections 216, 1194, 1194.2, and 1197 of the
>      Labor Code

Section 1197 of the Labor Code establishes California's minimum wage.  Section 1194 creates a cause of action for employees to recover unpaid wages from an employer who fails to pay them at the legal minimum wage or overtime rate.  Section 1194.2 allows the employee to recover liquidated damages for such a violation and section 216 makes it a misdemeanor for any employer to withhold wages willfully from an employee after the employee has demanded those wages.

Here, Plaintiffs allege that Defendants' policies for paying truck drivers violate these Labor Code provisions.  In particular, they contend that Defendants' linehaul pay formula, timekeeping system, and breakdown policy ultimately deprive the putative class members of their lawfully owed compensation.  Because these policies apply to every one of Defendants' drivers in California, Plaintiffs' wage-and-hour claims inherently raise many legal and

United States District Court
For the Northern District of California

factual questions common to all putative class members. These questions can be answered principally through common evidence.

For instance, Plaintiffs' allegations about Defendants' timekeeping system will require proof that Defendants' rounding practices distort city drivers' working hours to such an extent that they ultimately violate California's minimum wage and overtime laws. This will entail common fact-finding to determine the formula Defendants use to calculate city drivers' hourly pay and whether that formula leads to underpayment. It will also likely require adjudication of the various legal questions that Defendants raise in their brief, including whether federal regulations expressly permit employers to use rounding systems like theirs. See Opp. 22-25. These issues are relevant to every class member's wage-and-hour claims and can easily be addressed in a class action.

Similarly, Defendants' linehaul pay formula and breakdown policy -- both of which affect every linehaul driver in the State -- also raise many common questions. These include whether the linehaul pay formula misrepresents linehaul drivers' working hours, whether the formula adequately compensates drivers for non-driving time, whether the breakdown policy exacerbates any inaccuracies in the linehaul formula, and other questions. Here again, Defendants raise additional legal questions -- such as whether California law recognizes the "lawfulness of piece-rate compensation for drivers" -- that are also relevant to all putative class members. Opp. 22-25. When combined, the various common questions that Defendants' pay policies raise will likely predominate over individual questions.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

Defendants nevertheless argue that individual questions inevitably predominate over individual ones in wage-and-hour class actions like this one.  They rely on two decisions from courts in this district for support: Washington, 271 F.R.D. at 640, and Cornn v. United Parcel Service, Inc., 2005 WL 2072091, at *5 (N.D. Cal.).  Neither of these cases is analogous.

The plaintiffs in Washington were denied class certification because they failed to show that the defendant's unwritten break policies were consistent across multiple locations.  271 F.R.D. at 640.  Here, in contrast, Plaintiffs' wage-and-hour claims are based on concrete, uniform pay policies that apply equally to drivers across the State.  This kind of evidence -- that is, proof of a defendant's uniform pay policy -- is often sufficient to satisfy the predominance prerequisite in cases where a plaintiff-employee alleges underpayment.  See, e.g., Chavez v. Lumber Liquidators, Inc., 2012 WL 1004850, at *6 (N.D. Cal.) (certifying a class of employees alleging overtime violations based on the plaintiff's evidence that he was subject to a "uniform practice for calculating overtime pay").

Cornn is inapposite for similar reasons.  In that case, the court refused to certify a class of truck drivers who alleged inaccurate timekeeping practices because the defendant-employer offered evidence that the putative class members' punching-in routines varied so widely as to make certification inappropriate. 2005 WL 2072091, at *5 (noting that there was "no common practice" among delivery drivers with respect to punching in for shifts). Because the court could not assume that every driver began work immediately after punching in, the defendant's timekeeping records

36

**United States District Court**
For the Northern District of California

could not serve as common proof for every driver in the proposed class.  Id.  Defendants in this case, however, have not shown that their timekeeping records -- or any of their other records relating to statewide pay policies -- suffer from the same probative shortcomings as those in Cornn.

Thus, in light of the numerous common questions raised by Defendants' timekeeping practices, linehaul pay formula, and breakdown policy, Plaintiffs have satisfied Rule 23(b)(3)'s predominance requirement with respect to their wage-and-hour claims.

c.    Penalties under Section 203 of the Labor Code

Section 203 of the Labor Code imposes monetary penalties on employers who unlawfully withhold wages from employees who are discharged or who quit.  These penalties are paid directly to the employee.  Cal. Lab. Code § 203(a).

Here, Plaintiffs allege that Defendants failed to compensate fully drivers who quit or were terminated.  This claim is largely duplicative of Plaintiffs' underlying wage-and-hour claims and, as such, can be proven with essentially the same sources of common evidence.  The various legal and factual questions that must be answered to determine Defendants' liability for wage-and-hour violations coincide, in large part, with the legal and factual questions that must be answered to determine their liability under section 203.  Cf. Pina, 2012 WL 1278301, *9 (finding that because the defendants' liability for section 203 penalties overlapped sufficiently with their liability for other wage-related violations, "it will follow necessarily that class members who terminated their employment were owed additional wages as [sic]

the time of termination"). Because these common questions predominate over individual ones with respect to Plaintiffs' wage-and-hour claims, they also predominate with respect to Plaintiffs' section 203 claim.[10]

    d. Violation of Section 204 of the Labor Code

    Section 204 of the Labor Code requires employers to pay their employees on a regular basis and in a timely manner. Specifically, it requires employers to pay their employees bi-monthly and to ensure that employees are compensated within two to four weeks of performing any labor. Cal. Lab. Code §§ 204(a) & (d).

    Here, Plaintiffs' section 204 claim -- much like their section 203 claim -- is essentially derivative of their other wage-related claims and will likely rely on the same sources of common proof. In short, if Plaintiffs can demonstrate that Defendants failed to compensate them fully, then they can easily show that Defendants also failed to pay them in a timely manner. Because common questions predominate with respect to Plaintiffs' other wage-and-hour claims, they also predominate with respect to Plaintiffs' section 204 claim.

---

    [10] Any individual questions that must be answered to calculate section 203 damages -- regarding the timing of when certain employees quit or were terminated -- would impose only marginal burdens on the Court. See Lemus v. H&R Block Enter., LLC, 2010 WL 5069695, *5 (N.D. Cal.) (granting class certification on several wage-and-hour claims and concluding that payroll records would make "[c]alculation of damages relating thereto, including penalties under section 203 . . . straight forward and readily done").

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

e.   Failure to Provide Accurate, Itemized Wage
Statements under Section 226 of the Labor Code

Section 226 of the Labor Code requires that employers provide every employee with a written wage statement that lists, in relevant part:

> (1) gross wages earned, (2) total hours worked by the employee . . . (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions . . . (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, . . . and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee.

Cal. Lab. Code § 226(a).  If an employer knowingly and intentionally fails to provide these itemized statements to an employee, it must pay the employee damages as set forth in the statute.  Id. § 226(e).

Here, Plaintiffs allege that Defendants knowingly failed to provide itemized wage statements to drivers in violation of section 226.  They have provided evidence showing that Defendants provide wage statements to all drivers, Fishpaw Dep. 166:3-:23, thus laying the foundation for several common questions of law and fact.  These include: whether the wage statements issued to drivers include every item required by California law, whether Defendants knowingly or intentionally omitted any information from these wage statements, and whether and how linehaul drivers' wage statements differ from those of city drivers.  Defendants' section 226 liability is also predicated upon their liability for the various other wage-related violations Plaintiffs allege, all of which raise additional common questions.  Taken together, these questions predominate over individual questions.

39

**United States District Court**
For the Northern District of California

f. Unfair Business Practices under the Business and Professions Code

Section 17200 of the Business and Professions Code, also known as California's Unfair Competition Law (UCL), prohibits certain "unlawful, unfair or fraudulent business act[s] or practice[s]." Cal. Bus. & Prof. Code § 17200. Plaintiffs allege that Defendants have violated the UCL by committing various Labor Code violations. 1AC ¶¶ 55-57. Thus, the many common questions raised by Plaintiffs' various Labor Code claims are also directly relevant to establishing Defendants' liability under the UCL. Because these questions predominate with respect to those other claims -- and because Defendants do not identify any element of this claim requiring an individualized inquiry -- Plaintiffs satisfy the predominance prerequisite with respect to their UCL claim, as well.

2. Superiority

"Rule 23(b)(3) also requires that class resolution must be 'superior to other available methods for the fair and efficient adjudication of the controversy.'" Hanlon, 150 F.3d at 1023 (quoting Fed. R. Civ. P. 23(b)(3)). "If each class member has to litigate numerous and substantial separate issues to establish his or her right to recover individually, a class action is not 'superior.'" Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1192 (9th Cir. 2001).

In this case, Plaintiffs satisfy the superiority prerequisite for all of their claims except for the linehaul drivers' meal and rest break claims. The risks, small recovery, and relatively high costs of litigation here make it unlikely that individual drivers

will pursue claims against Defendants independently.  A class action, however, "would offer those with small claims the opportunity for meaningful redress."  <u>Sullivan v. Kelly Services, Inc.</u>, 268 F.R.D. 356, 365 (N.D. Cal. 2010).  In addition, a class action would more efficiently resolve the numerous legal and factual questions relevant to every driver's claims against Defendants.  Accordingly, the class action is superior to individual litigation in this case.

CONCLUSION

For the reasons set forth above, the Court DENIES Defendants' motion for partial summary judgment (Docket No. 56).  Plaintiffs' motion for class certification is GRANTED in part and DENIED in part (Docket No. 57).

For all of Plaintiffs' claims other than their first cause of action, the Court certifies a class of: all truck drivers employed by Defendants in California between May 2007 and May 2011. Plaintiffs Mendez and Martinez are appointed representatives of the class.

For Plaintiffs' first cause of action (i.e., their meal and rest break claims), the Court certifies a subclass of: all truck drivers employed by Defendants in California between May 2007 and May 2011 who performed city driving.  Plaintiff Mendez is appointed representative of this sub-class.

Plaintiffs' counsel is appointed class counsel.  Plaintiffs' evidentiary objections to James Fishpaw's declaration and deposition testimony are overruled as moot.  Plaintiffs' supplemental briefs regarding additional authority (Docket Nos. 62

United States District Court
For the Northern District of California

& 64) are stricken for failing to comply with Civil Local Rule 7-3(d)(2).

IT IS SO ORDERED.


Dated: 11/19/2012

_____
CLAUDIA WILKEN
United States District Judge